PROVIDENCE (WIGHTMAN v.). See Case No. 17,630.

PROVIDENCE, ETC., R. R. CO. (HIKE v.). See Case No. 11,163.

## Case No. 11,451.

### In re PROVIDENCE & N. Y. STEAMSHIP CO.

[6 Ben. 124;[1] 15 Int. Rev. Rec. 194.]

District Court, S. D. New York. June, 1872.

LIMITING LIABILITY OF SHIP OWNERS — ACT OF 1851—LOSS BY FIRE—INJUNCTION.

1. A steam propeller, running between Providence and New York, was burned at her dock in New York, on May 24, 1868, with a valuable cargo on board. Portions of the cargo were saved, but not in a condition to be delivered. The wreck of the vessel was sold for $5,000. Various shippers of cargo on board the vessel commenced suits against the corporation which owned her, to recover for the loss of their goods. These suit were pending in the courts of the states of New York, Rhode Island and Massachusetts. In 1872, the owners of the steam propeller filed a libel and petition in this court, under the 55th, 56th, 57th, and 58th admiralty rules of the supreme court, for the purpose of obtaining the benefit of the limitation of liability given by the act of March 3, 1851 (9 Stat. 635). On the filing of the petition, the court made an order directing that an appraisement of the value of the interest of the petitioners in the vessel and her freight be made by the clerk, on proofs to be presented to him, and on hearing the petitioners and such of the parties as had begun suit in this district, and that notice of the hearing be given to the attorneys of such parties, and that, in the mean time, the said parties and their attorneys be enjoined from the further prosecution of those suits. One of those parties moved to set aside that order: *Held*, that the proceeding thus instituted is a matter of exclusive admiralty jurisdiction. It is substantially a suit in rem against the vessel and its pending freight.

[Cited in The John Bramall, Case No. 7,334; Re Long Island, etc., Transp. Co., 5 Fed. 625, 627; The Tolchester, 42 Fed. 185.]

2. The supreme court had power to make the 55th admiralty rule, notwithstanding the provision in the act of March 2, 1793, § 5 (1 Stat. 335), that an injunction shall not "be granted to stay proceedings in any court of a state."

[Cited in Re Long Island, etc., Transp. Co., 5 Fed. 625, 627.]

[See Hill Manuf'g Co. v. Providence & N. Y. S. S. Co., 113 Mass. 501.]

3. The rules, above named, do not transcend the act of 1851, or the power of the supreme court to make rules, under the 6th section of the act of August 23, 1842 (5 Stat. 518).

4. The 3d section of the act of 1851 was applicable to the case presented on the petition, although the loss was a loss by fire.

In admiralty.

E. D. McCarthy, for the motion.

J. H. Choate, opposed.

BLATCHFORD, District Judge. This libel and petition are filed under the rules in admiralty (55, 56, 57, and 58) prescribed by the supreme court at the December term, 1871, as rules of practice under the act of March

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

3, 1851, entitled "An act to limit the liability of ship owners, and for other purposes." 9 Stat. 635. The petition avers, that the petitioners are a Rhode Island corporation, and were the owners of the steamship Oceanus, a vessel which belonged to a line of steam propellers owned and run by said corporation, for the carriage of freight and passengers between Providence, in Rhode Island, and the city of New York, and was enrolled at the office of the collector of customs in Providence; that, on the 23d of May, 1868, the Oceanus set sail from Providence, on one of her regular trips in said line, having on board a large and valuable cargo, belonging to several owners or freighters, who had shipped the same therein, to be carried on freight to New York, and there delivered to various consignees, according to the respective directions accompanying the same; that the vessel, with her cargo, arrived at New York on Sunday, the 24th of May, and made fast to the dock, in her usual berth, at pier 27, North river, and on that day discharged her passengers and their baggage, but none of her cargo; that, shortly after noon, on that day, a fire broke out in the buildings at or near the head of the pier where the vessel lay, which spread with great rapidity down the pier and soon reached the vessel, which was thereby burned to the water's edge, and almost the whole of her cargo was destroyed; that small portions of her cargo were discharged in a damaged condition, but wholly unmerchantable, and having lost the form of merchandise in which they were shipped, and no freight was earned or received by the petitioners on any portion of the cargo; that the remains of the steamer, left by the fire, did not exceed $5,000 in value, and were shortly afterwards sold for that sum; that the said fire so happening to and on board of said vessel was not caused by the design or neglect of the petitioners, the owners of said vessel, but the same happened, and the same, and the loss, damage, injury and destruction resulting therefrom to said vessel and cargo, were done, occasioned and incurred without the privity or knowledge of the petitioners; that, nevertheless, certain persons, thereinafter named, being, or claiming to have been, owners, shippers or consignees of portions of said cargo so burned and destroyed on said vessel, have sued the petitioners in the courts of the state of New York, within the Southern district of New York, for the loss and destruction of such portions of said cargo; that the petitioners, desiring to contest their liability, and the liability of said vessel, for the loss, destruction, damage and injury occasioned by said fire, and also to claim the benefit of limitation provided for in the third and fourth sections of said act, are ready and willing and offer to pay into court the amount of their interest in said vessel and freight, or to give a stipulation, with sureties, for the payment thereof into court,

whenever the same shall be ordered; that the facts and circumstances by reason of which exemption from liability is claimed, in addition to the foregoing facts, are, that the steamer, which was in all respects properly manned and equipped for the service in which she was engaged, lay in her usual berth, fastened to the south side of said pier, her stern not being more than thirty feet from the bulkhead adjoining the head of said pier on the south, upon which bulkhead the buildings in which said fire broke out were situated; that, shortly after one o'clock in the afternoon, the fire broke out, and was discovered in an office or room in said building; that, although an alarm was immediately given, and the fire department was called to the spot, and 'they and the persons on board of and connected with said steamer used every effort to stay the progress of the fire, it spread with great violence and rapidity, and the wind, being right down the pier, carried the flames directly and very rapidly towards the vessel, so that it was found impossible to rescue her, or to remove her out of the reach of the fire, or to extinguish the flames after they had enveloped her, until she was burned and destroyed; that the said fire originated accidentally, and without fault, neglect or design on the part of the petitioners, or their knowledge or privity; [that William F. Knowlton and others, composing the firm of William Knowlton & Sons, of the city of New York, have commenced an action against the petitioners, as owners of said vessel, in the superior court of the city of New York, claiming to recover the sum of $2,436.20, the alleged value of merchandise alleged to have been lost on said vessel, in and by said fire, and to have belonged to them; that William A. Hall and others, composing the firm of Benedict, Hall & Co., of the city of New York, have commenced an action against the petitioners, as such owners in the court of common pleas in and for the city and county of New York, claiming to recover the sum of $3,263.30, the alleged value of other merchandise alleged to have been lost on said vessel in and by said fire, and to have belonged to them; that A. F. Harding and O. M. Basset, of the city of New York, have commenced an action in the superior court of the city of New York against the petitioners, as such owners, claiming to recover the sum of $700, the alleged value of other merchandise alleged to have been lost on said vessel in and by said fire, and to have belonged to them; that the Oriental Mills, a Connecticut corporation, have commenced an action in a court of the state of Rhode Island against the petitioners, as such owners, claiming to recover several thousand dollars, the alleged value of other merchandise alleged to have been lost on said vessel in and by said fire, and to have belonged to them;][2] that various parties,

claiming as shippers, owners or consignees of portions of said cargo burned on said vessel, to large amounts, have commenced actions therefor against the petitioners in the courts of the states of New York, Massachusetts and Rhode Island; and that the petitioners are ignorant of the actual value of all the cargo burned and destroyed by said fire on board of said vessel, but aver it to have exceeded $100,000. The prayer of the petition is, that this court will cause due appraisement to be had of the amount or value of the interest of the petitioners in the said vessel, and her freight for said voyage, and will either order the same to be paid into court, or stipulation to be given by the petitioners, with sureties, for the payment thereof into court, whenever the same shall be ordered, and will, upon compliance with such order, issue a monition against all persons claiming damages for the loss, destruction, damage and injury occasioned by said fire on board of said vessel, citing them to appear before this court and make due proof of their respective claims, at a time to be therein named, as to all which claims the petitioners will contest their liability, and the liability of said vessel, independently of the limitation of liability claimed under said act; that the court will also designate a commissioner before whom such claims shall be presented in pursuance of such monition, and that, upon the coming in of the report of said commissioner, and confirmation thereof, if it shall appear that the petitioners are not liable for such loss, damage, destruction and injury, it may be so finally decreed by this court, and, otherwise, that the moneys paid or secured to be paid into court as aforesaid, after payment of costs and expenses, shall and may be divided pro rata amongst the several claimants in proportion to the amount of their respective claims; and that, in the mean time, and until the final judgment of the court shall be rendered herein, this court will make an order restraining the further prosecution of all and any suit or suits against the petitioners in respect of any such claim or claims, and particularly the said several parties who have commenced the said suits within this district.

On the filing of this petition, this court made an order, directing that an appraisement of the amount or value of the interest of the petitioners in the said vessel, and her freight for said voyage, be made by the clerk of this court, on proof to be presented before him, and after hearing the petitioners, and such of the parties who have commenced said actions within this district, against the petitioners, as may appear before him; and that, for that purpose, the clerk cause notice of the time and place of such appraisement and hearing to be served upon the attorneys in said actions of the said respective parties; and further ordering, that, in the mean time and until the report of the clerk in the premises, the said parties, and each of them, their

---

[2] [From 15 Int. Rev. Rec. 194.]

agents and attorneys, refrain from the further prosecution of the said suits in the courts of the state of New York.

A motion is now made on the part of the plaintiffs in one of the said suits, to vacate the said order.

1. It is claimed, in support of said motion, that the proceeding instituted by said petition is not a matter of exclusive admiralty jurisdiction, but is a matter over which the state court in which such suit is pending has concurrent jurisdiction with this court. The exclusive original cognizance, given to the district courts, of all civil causes of admiralty and maritime jurisdiction, by the 9th section of the act of September 24, 1789 (1 Stat. 76, 77), is there qualified only by this provision—"saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." Now, it is not doubtful, that the state court is competent to enforce, by the remedy of a suit in personam against the owners of this vessel, according to the course of the common law, the claim of such plaintiffs. But that is not the remedy which the proceeding now instituted in this court is primarily brought to enforce. This proceeding is substantially a suit in rem against the vessel and its pending freight, to which all persons claiming for a loss of cargo are to be summoned in as parties, in order to give to the owners of the vessel the benefit of the provisions of the act of congress limiting their liability. The proceeding, in that view, is one of admiralty and maritime jurisdiction, which no state court can administer. The common-law remedy in the state courts, on behalf of each of the several plaintiffs, cannot co-exist with the rights conferred on the owners of the vessel by the act of congress; and the enforcement of such rights, under the 4th section of the act, by the taking, by the owners of the vessel, of appropriate proceedings to apportion the sum for which they are liable among the several owners of property shipped on board of the vessel, on the same voyage, who have suffered the loss of such property, without the privity or knowledge of such owners of the vessel, cannot be had through any form of common-law remedy which the common law is competent to give. A state court has no jurisdiction whatever over such a proceeding as that instituted by this petition. The 4th section of the act, in saying that the appropriate proceedings may be taken "in any court," to make such apportionment, and that it shall be a sufficient compliance with the act, on the part of the owner of the vessel, if he shall transfer his interest in the vessel and freight, for the benefit of the claimants, to a trustee to be appointed "by any court of competent jurisdiction," manifestly, in view of the maritime subject-matter, and of the character of the proceeding, which is not a common-law remedy, competent to be given by the common law, refers to a competent federal court,

and not at all to a state court. That the state courts have not the requisite jurisdiction, and that the district courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of such a proceeding as this, is determined by the supreme court, in the case of Norwich & N. Y. Transp. Co. v. Wright, 13 Wall. [80 U. S.] 104. The res being brought into this court, to be distributed among those entitled to share in it, it necessarily follows that this court must first adjudicate, as to each claimant, whether he is at all entitled to share in it, provided the ship owner chooses to raise the question, independently of any limitation of liability, that neither he nor his vessel is at all liable to such claimant in the premises. But this is incidental to the main purpose of the proceeding. In making the apportionment provided for by the 4th section of the act, the amount of each claim that is to share must be ascertained by this court. This involves the conclusion, in respect to any claimant, that he is not entitled to anything. There would be no justice in requiring the ship owner to admit a claim at the amount claimed, or at any other amount, as a condition of allowing him to bring the proceeding in this court, when, in the suit in the state court, he may, as he has a right to do, be asserting that he is not liable at all, as well as asserting that, if liable at all, he is only liable according to the limitation provided by the act of congress.

2. It is also contended that, although the 55th rule in admiralty provides that the district court shall, "on the application of the said owner or owners, make an order to restrain the further prosecution of all and any suit and suits against said owner or owners, in respect of any such claim or claims," the supreme court had no power to make any such rule, in view of the inhibition contained in the 5th section of the act of March 2, 1793 (1 Stat. 334, 335). That section reads as follows: "Writs of ne exeat and of injunction may be granted by any judge of the supreme court in cases where they might be granted by the supreme or a circuit court; but no writ of ne exeat shall be granted unless a suit in equity be commenced, and satisfactory proof shall be made to the court or judge granting the same, that the defendant designs quickly to depart from the United States; nor shall a writ of injunction be granted to stay proceedings in any court of a state; nor shall such writ be granted in any case without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving for the same." By the act of February 13, 1807 (2 Stat. 418), power is given to the district judges to grant writs of injunction in cases before the circuit courts of their districts, under the restrictions prescribed by act of congress. The provision of the act of 1793, in regard to staying proceedings in a court of a state, is no broader or more stringent than the provision of the same act in regard to giving notice of

the application for an injunction. In the case of In re Carlton [Case No. 2,415], it was held by Mr. Justice Story, in the circuit court in Massachusetts, on a question certified to it from the district court, as to whether a writ of injunction could be granted by the district court in bankruptcy, without previous notice to the adverse party, that neither the act of 1793, nor the act of 1807, had any application to cases in bankruptcy in the district courts, or to any cases except cases pending in the circuit court, in the exercise of its ordinary jurisdiction, and that the provisions of those acts, in regard to notice of applications for injunctions, did not touch the jurisdiction of the district court in the administration of equity in bankruptcy cases, under the bankruptcy act of 1841 [5 Stat. 440]. In consonance with that decision, it was held, by Judge Betts, in this court, in Re Smith [Case No. 12,994], that the restriction as to notice, in the act of 1793, applies only to cases pending in the supreme or circuit court, and does not apply where, as under the bankruptcy act, a new equity jurisdiction is created, and is conferred on the district court in relation to matters pending in that court, and within its cognizance exclusively. These views, in regard to the restriction as to notice, are equally applicable to the restriction as to staying proceedings in a court of a state. Under the bankruptcy act of 1867, it is the constant practice of the district courts not only to restrain parties litigant in the state courts, whenever it becomes necessary, in order to give force and effect to the jurisdiction and powers conferred upon the district courts by the bankruptcy act, but to grant such injunctions without previous notice. See the cases collected in Bump, Bankr. (5th Ed.) 267, 268, 542. The jurisdiction created by the act of 1851, and the rules of the supreme court passed to carry it into effect, may properly be called a new admiralty and maritime jurisdiction conferred on the district courts in relation to matters pending in them and within their exclusive cognizance. By the 14th section of the act of September 24, 1789 (1 Stat. 81, 82), this court has power to issue all writs which may be necessary for the exercise of its jurisdiction and agreeable to the principles and usages of law. The supreme court, in providing, by rule 55, for the making, by the district court, of an order to restrain the prosecution of suits against ship owners in respect of the claims mentioned in that rule, manifestly intends that persons prosecuting suits in state courts shall be restrained, and it has made no provision for giving notice of application for the restraining order. With full knowledge of the existence of the act of 1793, it has prescribed a rule which proceeds on the view that such act does not apply, in either respect, to the new jurisdiction of the district courts. Such view is, in my judgment, a sound one, and justified by the considerations already referred to. The making, by the district court, of the order of restraint, may well be regarded as necessary to the exercise of its jurisdiction, an exclusive jurisdiction, and one which would be rendered futile and nugatory, if the claimants against the ship owner were permitted to proceed and collect from him their full claims, by suits, without regard to the act of 1851, while this court was endeavoring to administer the provisions of that act, by giving to the ship owner the benefit of a limited liability in respect to all of the claimants. And, although the 4th section of the act of 1851 provides that all claims and proceedings against the ship owner shall cease after a transfer by him, to a trustee, of his interest in the vessel and her freight, yet, under the broad language of rule 55, and with a view to give to the ship owner the full benefit of the jurisdiction which he invokes, and which attaches by the filing of his petition in this court, it is eminently proper that this court, in conferring on a claimant the privilege, not required by rule 55, of being heard on the appraisement, should stay his proceedings while the preliminary steps are being taken which are to result in putting into the hands of this court, or of an officer of it, as a trustee, a sum of money, or a stipulation, representing the interest referred to in the 4th section, or such interest itself.

3. To the objection urged, that the rules of the supreme court transcend the act of 1851, in conferring the right to test the question of complete exemption, as well as of limited liability, and in confining the jurisdiction to the federal tribunals, and in providing for restraining the prosecution of pending suits, it is sufficient to say, that this court would not take it upon itself to impugn the validity of rules so carefully considered as these manifestly have been, at least, unless there was a manifest repugnance in them to the constitution or some act of congress. Independently of this, the views before stated serve to show that the provisions of the rules do not transcend the act of 1851, or the power of the supreme court, under the 6th section of the act of August 23, 1842 (5 Stat. 518).

4. The petition, being filed, setting forth a case within the act of 1851, it must necessarily rest with this court to adjudicate, if and when issues are raised on such petition, whether such a case in fact exists. If it does not exist, the petition will be dismissed, and the pending suits will proceed. If it does exist, this court will administer the relief prayed for by the petition. It is for this court to determine whether the case is one of limited liability, within the 3d section of the act, and it is to determine that question on issues framed on the petition, in the orderly manner of adversary litigation, in which the full right of review and appeal to which any party may be entitled, will be secured to him.

PROVIDENCE (Case No. 11,453) [20 Fed. Cas. page 20]

5. It is contended, that the 3d section of the act of 1851 cannot apply to the present case, one of loss by fire, on the ground that, under the 1st section of that act the ship owner is not liable for any loss by fire unless such fire is caused by his design or neglect; that, if the fire in this case was not caused by the design or neglect of the corporation, it is not liable at all, and there is no case for the operation of a limited liability, under the 3d section; and that, if the fire in this case was caused, as is insisted, by the neglect of the corporation, it must necessarily have been occasioned with the privity or knowledge of the corporation, and so not be within the 3d section. But it by no means necessarily follows, that because the fire happening to or on board the vessel was caused by the neglect of the corporation, so as not to give to it the benefit of the total exemption provided for by the 1st section, the loss by such fire of property shipped on board of the vessel was not a loss occasioned without the privity or knowledge of the corporation, so as to deprive it of the benefit of the limited liability provided for by the 3d section. The solution of the question must depend on the facts of the case as developed by judicial process, and may be in some degree influenced by questions growing out of the contracts of the parties, in reference to the liability of the ship owner, under the proviso of the 1st section of the act.

The motion is denied.

[NOTE. A motion was subsequently made to strike out a paper filed in this case, called "Exceptions and Answer." The court held that the paper should be allowed to stand, so far as it amounted to an exception to the jurisdiction of the district court to enjoin further actions. Case No. 11,452.]