## THE TOLCHESTER.

*(District Court, D. Maryland.  February 5, 1890.)*

1. SHIPPING—LIMITING LIABILITY—SUIT BEGUN IN STATE COURT—JURISDICTION.
     In a case of application for limitation of liability of the owners of a steam-boat which had been sued in the state courts in actions given by the statute of Maryland for loss of life arising out of a collision in the harbor of Baltimore, *held,* that after the steamer had been appraised, and stipulation given in the district court for the payment into court of the amount of the appraisement when ordered, the reduction of the amounts sued for in the state courts so as to reduce the aggregate of the amounts claimed in those suits below the amount of the appraisement and stipulation could not take away the jurisdiction of the district court, even conceding that the claims so reduced were all that the owners of the steam-boat could be made liable for.

2. SAME—TORTS COMMITTED ON NAVIGABLE WATERS—HIGHWAYS—JURISDICTION OF FEDERAL COURT.
     *Held, further,* that, as the liability of the owners of the steam-boat arose out of a maritime tort committed on water which was a navigable highway of commerce,

the district court had jurisdiction of it in admiralty, and that the rule of limitation of the liability of the owners of the steam-boat with respect to such a tort was a rule of admiralty procedure prescribed by congress, the power to enact which was not necessarily referable to the commercial clause of the constitution, and therefore the fact that the vessel was customarily employed solely in Maryland waters, and not in foreign or interstate commerce, was immaterial.

3. SAME—ALLOWANCE OF SUITS IN STATE COURT.

Held, further, that after the stipulation was given the court had in its possession a fund to which, under the rule of procedure enacted by congress, all claims were transferred, and proceedings against the owners were forbidden; that therefore the court had no discretion to allow the suits in the state courts to go on for the purpose of ascertaining the amount of damages, even though the plaintiffs in those suits might have reason to anticipate difficulty in asserting in the district court the right of action given by the state statute for the loss and injury sustained by them by reason of the death of the persons drowned in the collision.

4. SAME—INJUNCTION.

Held, further, that the district court, having in its control the only fund to which claimants have a right to resort for payment of their claims, and being the only court competent to administer the admiralty rule for the limitation of the liability of the owners of the vessel, it has the authority and jurisdiction, in order to prevent that administration and its decree from being nugatory, to issue an order restraining the further prosecution of the suits in the state courts.

(*Syllabus by the Court.*)


In Admiralty.

*John H. Thomas* and *H. V. D. Johns*, for libelant.

*Albert Ritchie*, for respondents.


MORRIS, J.   This proceeding was begun by the Tolchester Excursion Company, of Baltimore city, a Maryland corporation, which filed its libel for a limitation of liability on the 30th December, 1889, alleging that it was the owner of the steamer Tolchester on the night of 28th July, 1889, when a collision occurred between that steamer and a small sail-boat in the harbor of Baltimore.   The libel further alleges that suits have been instituted in the state courts of Baltimore city against said company by persons claiming to have suffered loss and damage by said collision, for an amount in the aggregate exceeding the value of the steamer and her pending freight.   The company, in its libel, denied its liability for any damage resulting from the collision, desiring to contest its liability therefor, and also, if liable, prayed to have the benefit of a limitation of its liability, setting out the facts and circumstances on which it relies, and praying for an order for the appraisement of the steamer and freight, and to be allowed to give a stipulation with sureties for the payment thereof into court when ordered, and for a monition warning all persons having claims arising out of the collision to present the same, and for an order restraining the further prosecution of all suits against the company in respect of all such claims.   On January 3, 1890, the court ordered the appraisement to be made; and on January 7th stipulation for $23,150, the amount of the appraised value of the vessel and freight, was given and filed in court.   On the 13th of January, it was ordered that notice should be served on the parties who had instituted suits, to show cause why the monition and injunction prayed for in the libel should not be granted, and why they should not be restrained from prosecuting their suits in the state courts.

The parties upon whom this notice was served are now opposing the granting of the prayer of libelant's petition, and for cause they show: (1) That the collision occurred in the harbor of Baltimore, within the limits of the city, and, as respondents contend, was caused by the wrongful act and neglect of libelant and its officers and agents; that the persons who were in the small sail-boat at the time of the collision were Mary Kolb, John Pietz, Annie Kolb, Louis A. Deering, and Mary Weiner, and that the owner of the boat was Frederick Isaacson; that the suits instituted are for the damage to the sail-boat, and for the personal injuries received by Annie Kolb and Louis A. Deering, and also suits under the statute of Maryland for the death of Mary Kolb and John Pietz, who were drowned, and a suit by the father of Annie Kolb for loss of her services, and that Mary Weiner, who was drowned, left no one living who, under the Maryland statute, would be entitled to bring suit for her death. And the respondents allege that these suits embrace every claim which could possibly arise from the collision against the steamer or her owners. They allege that while it was true, when the libel was filed, that the amounts claimed as damages in the suits in the state courts exceeded the amount for which the steamer and her freight has been appraised, since the appraisement and the stipulation therefor was filed in this court the amounts claimed in the suits in the state courts was on January 16th reduced, so that now the aggregate amount claimed is only $22,000, which is less than the appraised value of the interest of libelant in the steamer and freight, and that therefore the libelant is not entitled to proceed to limit its liability.    (2) They further show that the steamer was employed exclusively as an excursion steamer, in the internal commerce of Maryland, and therefore the libelant is not entitled to a limitation of its liability.    (3) They further show that, in view of the doubt whether claims for damages arising from death by negligence given by the state statute can be made the basis of a suit in the admiralty, this court should refrain from interference until it shall appear that the libelant cannot be protected by pleading the defense of limited liability in the state court.

1. The first objection to the jurisdiction of this court is that the aggregate of the claims for which suit can be brought, conceding that it is a fact that there is no one living who is entitled, under the state statute, to sue for the death of Mary Weiner, does not, as now reduced, exceed the value of the steamer and freight. In our opinion, this question is to be determined by the jurisdictional facts as they existed at the time when the court assumed jurisdiction. It may, perhaps, be conceded that the libelants' proceeding, in its inception, was *ex parte*, and that up to the time of filing the stipulation the court had nothing upon which it could act, and that the libelant might, as of course, have dismissed its libel; but, after the stipulation was filed, there was placed under the court's control a fund for distribution in which all parties interested are entitled to share. That fund could not be withdrawn without the consent of all interested; and whether or not the court is entitled to retain that fund, and to exercise the jurisdiction invoked, must be determined by the facts existing at the time it was placed in the court's control.    If

at that time the court's jurisdiction was properly invoked, and it was then the duty of the court to keep it, and adjudicate all the questions as to its distribution, it does not seem possible that the jurisdiction could be divested by the subsequent reduction of the damages claimed in the suits in the state courts. The libelant had acquired a right to have this court proceed with the case, and this court cannot now refuse to do so. *Cooke* v. *U. S.*, 2 Wall. 218; *Mollan* v. *Torrance*, 9 Wheat. 537.

2. The jurisdiction of this court and the applicability of the act of congress is disputed upon the contention that the only power of congress to pass the limited liability act is derived from the commerical clause of the constitution, which is limited to commerce with foreign nations and among the several states. The Tolchester is a large steamer, enrolled and licensed under the laws of the United States for the coasting trade, and licensed to carry 1,200 passengers, and when the collision happened was starting on a voyage on the Patapsco river and Chesapeake bay, within Maryland waters. She was usually employed by her owners on the Patapsco river, the Chesapeake bay, and Susquehanna river. She was, before the collision, under a contract to make a trip to Fortress Monroe, in Virginia, which she performed after the collision. She was held by her owners for any employment she could get on the Chesapeake bay or any of its tributaries. While on her usual voyages, and on the voyage she had started on when the alleged tort was committed, she was navigating among vessels of all nations. The matters in dispute do not arise upon a contract relating to the purely internal commerce of a state. The claims arise out of an alleged tort committed upon a highway of commerce navigable from the ocean. *The Belfast*, 7 Wall. 624. As to torts committed upon the Patapsco river, there can be no question that this court has admiralty jurisdiction. It has frequently been held that, by the legislation with regard to the limitation of the liability of ship-owners for such torts, congress has simply declared that the rule prevailing in the admiralty courts of other countries shall prevail in ours, and has merely authorized the admiralty courts to adopt appropriate methods for securing the benefits of that maritime rule to ship-owners of the United States, and of other nations as well. In *Norwich Co.* v. *Wright*, 13 Wall. 127, the supreme court said:

"We do not hesitate to express our decided conviction that the rule of the maritime law on this subject, so far as it relates to torts, was intended to be adopted by the act of 1851."

In *The Scotland*, 105 U. S. 31, the rule was applied to the owners of a foreign vessel, and it was said:

"The rule of limited responsibility is now our maritime rule. It is the rule by which, through the act of congress, we have announced that we propose to administer justice in maritime cases."

In *Providence & N. Y. S. S. Co.* v. *Hill Manuf'g Co.*, 109 U. S. 593, 3 Sup. Ct. Rep. 379, 617, it was said:

"The rule of limited liability prescribed by the act of 1851 is nothing more than the old maritime rule administered in courts of admiralty, in all countries

except England, from time immemorial; and, if this were not so, the subject-matter itself is one that belongs to the department of maritime law." See also *Butler* v. *Steam-Ship Co.*, 130 U. S. 556, 9 Sup. Ct. Rep. 612.

It would appear, therefore, that the alleged liability with regard to which limitation is invoked has arisen from a marine tort on navigable waters, and that the jurisdiction of this court, and its power to adjudicate every question with regard to that liability, is dependent on locality, and not on the nature of the employment or commerce in which the vessel was engaged.

3. The third ground of contention goes to the exercise of jurisdiction, even if the court has it, because of the alleged difficulties attending the assertion by the respondents in this court of the right of action given by the state statute. As to this, it does not appear to me that the court has any discretion. The giving of a stipulation for the value of the vessel and freight is declared by the supreme court to be the equivalent of the surrender of vessel and freight provided for by section 4285, Rev. St., and that section declares that, upon such surrender, "all claims and proceedings against the owner shall cease." That is to say, such claims are thereby transferred from the owners to the fund thus created. The supreme court, by rule 54, in order to give effect to the immunity of the owners from suit after such surrender, directs that "the said court shall also, on the application of the said owner or owners, make an order to restrain further prosecution of all and any suit or suits against said owner or owners in respect of any such claim or claims." It would appear, therefore, that this court has no discretion to allow suits in other courts to go on even for the purpose of merely ascertaining the amount of damage. The express provision of the law and of the rule of the supreme court is that such suits shall not go on, but shall cease, and that all litigation shall proceed in the district court as against the property surrendered or its proceeds, or the sum stipulated to be paid into court in lieu of such surrender.

4. The only remaining question is as to the power of the court to issue an injunction as prayed. In *Providence & N. Y. S. S. Co.* v. *Hill Manuf'g Co.*, it would appear that the supreme court has intimated the proper solution of this question. On page 594, 109 U. S., 3 Sup. Ct. Rep. 389, it is said:

"It is hardly possible to read them [the supreme court rules] in connection with the act of 1851 without perceiving that, after proceedings have been commenced in the proper district court in pursuance thereof, the prosecution *pari passu* of distinct suits in different courts, or even in the same court, by separate claimants against the ship-owners, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose."

On page 600, 109 U. S., 3 Sup. Ct. Rep. 394, the court said that it was "unnecessary to determine the question as to the legality of the writ of injunction issued by the district court. Although we have little doubt of its legality, the question can only be properly raised on an application for an attachment for disobeying it." In *Norwich Co.* v. *Wright*, 13 Wall. 125, the supreme court had already said:

"If an action should be brought in a state court, the ship-owner should file a libel in admiralty, with a like surrender or deposit of the fund, and either plead the fact in bar in the state court, or procure an order from the district court to restrain the further prosecution of the suit."

The right of the district court, after it has in its possession the fund to be distributed, to issue an injunction, can, I think, also be supported upon the principle recognized in *Dietzsch* v. *Huidekoper*, 103 U. S. 494. The district court has possession of the only fund to which the claimants have a right to resort for the payment of their claim. It is the only court competent to settle, by a decree binding upon all parties interested, the question of the right of the ship-owner to have his liability limited. The injunction would, therefore, appear to be, as in the case of *Dietzsch* v. *Huidekoper*, ancillary to its administration of that fund, and necessary to prevent its judgment and its proceeding from being nugatory. The issuing of such an injunction was, after careful consideration, sanctioned in the *Providence & N. Y. S. S. Co. Case*, 6 Ben. 124; and in the *Long Island Transp. Co. Case*, 5 Fed. Rep. 599, which was followed in *The Amsterdam*, 23 Fed. Rep. 112. This proceeding is not a case of admiralty and maritime jurisdiction in which the right of a common-law remedy is expressly saved to suitors where the common law is competent to give it, because, as has been decided in the cases above cited, the common law is not competent to administer this maritime rule of limited liability where the vessel, or the fund representing it, is surrendered into the admiralty court by the owner.