Petition of TEXAS CO.

TEXAS CO. v. UNITED STATES et al. (two cases).

THE WASHINGTON.

THE RUCHAMKIN.

United States District Court
S. D. New York.

Dec. 9, 1953.

J. Edward Lumbard, U. S. Atty., New York City, T. F. McGovern, Admiralty & Shipping Section, Washington, D. C., and Herbert E. Ost, Admiralty Counsel's Office, New York City, of counsel, for U. S.

Thacher, Proffitt, Prizer & Crawley, New York City, Joseph M. Brush and Edward C. Kalaidjian, New York City, of counsel, for petitioner-libelant, Texas Co.

WEINFELD, District Judge.

The respondent, the United States of America, moves to transfer the above libel, instituted against it by the Texas Company, to the United States District

Court for the Eastern District of Virginia, to be tried with a suit previously instituted by the United States of America against the Texas Company, based upon the same collision which gives rise to the pending cause.[1] Respondent also moves to modify the injunction order entered in the limitation proceeding, filed in this district by the Texas Company as petitioner, so as to permit the suit in the District of Virginia to go forward.

At about 2:00 A.M. on November 14, 1952, some 55 miles off the Virginia Capes, the Tanker Washington, owned by the Texas Company, was in a collision with the U.S.S. Ruchamkin, a Navy attack transport. The U.S.S. Ruchamkin was part of a task force of eleven naval vessels, known as "Seascape," engaged in training maneuvers. Seven soldiers aboard the U.S.S. Ruchamkin were killed and thirty-two were injured. Both the tanker and the transport were badly damaged. A series of actions followed in the wake of the collision.

On March 2, 1953, the United States, as owner of the U.S.S. Ruchamkin, sued the Texas Company, as owner of the Tanker Washington, in rem and in personam in the Eastern District of Virginia. A motion by the Texas Company to quash process failed. On April 18, 1953, it filed an answer, but asserted no cross-libel for damages.[2] On the previous day the Texas Company filed a petition for exoneration from, or limitation of, liability in this district and a restraining order was issued against the Government's suit in Virginia. Also enjoined were various other actions which had been commenced against the Texas Company in this district for damages by injured men or by representatives of the estates of those who had been killed.

Thereafter, on May 6, 1953, the Texas Company filed a libel against the United States in this district charging the U.S.S. Ruchamkin and the ten other naval vessels engaged in operation "Seascape" with various acts of negligence which resulted in the collision. The respondent, United States of America, filed exceptions based upon alleged improper venue under § 2 of the Public Vessels Act, 46 U.S.C.A. § 781 et seq. At the time of the filing of this first libel, six of the vessels were within ports or anchorages in the United States; the rest were at sea or at foreign ports.

On July 13, 1953, the Texas Company, apparently to meet the exceptions, filed a second libel in this district. The complaint was identical to the first, but alleged that at the time of the filing the U.S.S. Fremont, one of the "Seascape" ships, was within a port in this district. Venue is again attacked by the Government. In addition, as noted, it also seeks a transfer to the District Court of Virginia under 46 U.S.C.A. § 742, which provides: " * * * Upon application of either party the cause may, in the discretion of the court be transferred to any other district court of the United States."[3]

■■■ I think, upon the facts, the Government has made out a case warranting the exercise of the Court's discretion in favor of a transfer to the Eastern District of Virginia. All the "Seascape" ships still on active duty operate out of Norfolk, Virginia, which is designated as their home port. While the affidavits fail to give a complete picture, it is clear

1. 46 U.S.C.A. § 742.

2. Under 46 U.S.C.A. § 783.

3. 46 U.S.C.A. § 742 is made applicable to the Public Vessels Act by 46 U.S.C.A. § 782. In general, the criteria relevant under the doctrine of forum non conveniens are applied. See Sbarbaro v. United States, D.C.Pa., 86 F.Supp. 477, 479; Greer v. United States, D.C.N.J., 90 F.Supp. 871, 873; Untersinger v. United States, 2 Cir., 181 F.2d 953, 956; see also Ex parte Collett, 337 U.S. 55, 72–73, 69 S.Ct. 944, 93 L.Ed. 1207; United States v. National City Lines, Inc., 337 U.S. 78, 84–85, 69 S.Ct. 955, 93 L.Ed. 1226; St. Paul Fire & Marine Ins. Co. v. American Mail Line Ltd., D.C. S.D.N.Y., 94 F.Supp. 28; Le Mee v. Streckfus Steamers Inc., D.C.Mo., 96 F. Supp. 270. Contra: Puget Sound Tug & Barge Co. v. The Go Getter, D.C.Or., 106 F.Supp. 492.

that many, if not most, of the witnesses have homes or are stationed in the Norfolk area, or embark or leave their ships at that port. The remaining witnesses are widely scattered throughout the country. New York City, on the other hand, is not a regular port of call for any of the ships. The Texas Company has an office in Virginia and, in fact, was amenable to process in personam there. The Texas Company has already indicated a purpose to issue interrogatories and to examine officers and members of the respective crews of the U.S.S. Ruchamkin and of all vessels involved in the "Seascape" operation as well as other naval personnel. It is estimated that the number of Navy witnesses to be questioned may exceed one hundred fifty. Records will be more readily available in connection with the taking of that testimony at the home port then elsewhere.

While they are not controlling,[4] factors to be considered are calendar conditions of the two districts and the effect of substantial delay upon the problems of proof and availability of witnesses upon the trial.[5] An immediate trial may be had in the Eastern District of Virginia, whereas in this district the calendar is behind approximately three and one-half years. If the trial is delayed, many of the naval personnel who are prospective witnesses may well be scattered over the four corners of the globe. The nature of the collision was such that it is highly desirable, to the extent possible, to avoid trial by deposition.[6] A prompt trial will enable the trial court to see and hear many of the witnesses to this unfortunate accident. There appears to be no countervailing consideration as far as the Texas Company is concerned, which requires that the pending libel be retained in this district.

This disposition makes it unnecessary to pass upon the exceptions filed by the Government to the second libel based upon alleged lack of proper venue.

There remains the Government's motion to modify the injunction in the limitation proceeding so as to permit the liabilities as between the U.S.S. Ruchamkin and the Tanker Washington, the colliding vessels, to be determined by the Eastern District Court of Virginia, subject to whatever limitation may be eventually decreed by this Court. The Government does not seek a transfer of the limitation proceeding; on the contrary, it requests that the Texas Company's right as petitioner be reserved for determination in this Court. Since it appears from the latest information furnished that the total of the claims filed in the limitation proceeding is less than the stipulated value, the Court is empowered upon equitable principles to lift the restraint to permit the Government's Virginia suit to go forward and to retain the proceeding.[7] This was the procedure adopted in Curtis Bay Towing

---

4. Cf. Ronson Art Metal Works, Inc., v. Brown & Bigelow, D.C.S.D.N.Y., 105 F. Supp. 169, affirmed, 2 Cir., 199 F.2d 760.

5. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

6. Cf. Lago Oil & Transport Co., Ltd. v. United States, D.C.S.D.N.Y., 97 F.Supp. 438.

7. The ad interim stipulation is for $2,109,-957.58. The total of all current claims is $2,027,013.93, which takes into account the reduction of the Government's claim from $800,000 to $601,833.93. But even if the Government had not reduced its claim, I take judicial notice that with respect to the remaining claims—all personal injuries and death actions—the ad damnum clauses in such suits are notoriously and invariably far in excess of ultimate recoveries. Under such circumstances, it would go counter to experience to assume that the aggregate recoveries would exceed the amount of the limitation fund. In any event, petitioner's right to limit liability is preserved by the retention of the proceeding, and in the extremely remote likelihood that it is necessary to distribute an inadequate fund "a concourse can take over the situation as it then is". Curtis Bay Towing Co. v. Tug Kevin Moran, 2 Cir., 159 F.2d 273, 276.

Co. v. Tug Kevin Moran, 2 Cir., 159 F.2d 273.[8]

The motion to transfer is granted and the motion to modify the injunction in the limitation proceeding is also granted as indicated herein.

Settle order on notice.

8. Cf. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520; Rice Growers Ass'n v. Rederiaktiebolaget Frode, 9 Cir., 171 F.2d 662.