229 F.2d 423
 Petition of TRINIDAD CORPORATION, Petitioner-Appellant, as owner of THE Tank Steamship FORT MERCER, for Exoneration from or Limitation of Liability.
Raymond S. Rodriquez et al., and Earl T. Smith, Claimants-Appellees.
 No. 257.
 Docket 23478.
 United States Court of Appeals Second Circuit.
 Argued March 7, 1955.
 Decided December 28, 1955.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Burlingham, Hupper & Kennedy, New York City, Eugene Underwood, Elliott B. Nixon, Jr., of counsel, for petitioner-appellant.
 Shafter & Shafter, New York City, for claimants-appellees Raymond S. Rodriquez, and others.
 Klein & Ruderman, New York City, for claimant-appellee Earl T. Smith. Edwin M. Bourke, New York City, Advocate.
 Before MEDINA and HINCKS, Circuit Judges, and BURKE, District Judge.
 HINCKS, Circuit Judge.
 
 
 1
 On February 18, 1952, in rough water off Cape Cod, while on a voyage from Louisiana to Maine, the petitioner's tank steamship Fort Mercer broke in two. Of the nine men on the forward section of the vessel, five lost their lives. Four men on the forward section and twenty-one men on the stern section were rescued the following day and all other survivors remained on the stern section until it was towed to port. Three actions in behalf of twenty surviving members of the crew were brought in the United States District Court for the Southern District of New York under the Jones Act to recover damages for personal injuries allegedly sustained in an aggregate amount of $2,680,000. Of these actions, one was in behalf of Rodriquez and eighteen other members of the crew on their respective claims; another was in behalf of the claimant Smith.
 
 
 2
 Thereafter, on July 31, 1952, the petitioner filed, also in the District Court for the Southern District of New York, a verified petition for limitation in the usual form and offered an ad interim stipulation, duly supported by affidavits, in the sum of $564,007.65 which was alleged to be not less than the aggregate value of the salved section of the vessel plus pending freight. On the same day, the court ordered the filing of the proffered stipulation, issued its monition requiring that all claims be filed on or before September 9, 1952, and entered the usual order restraining the beginning and continued prosecution of claims elsewhere than in the limitation proceedings. Thereafter, some 38 claims, including those of the plaintiffs in the actions at law, were filed in the limitation proceedings in the aggregate amount of $4,435,000, together with answers in which the claimants denied petitioner's right to a limitation of liability. Of these claims, the petitioner without order of court settled twelve for an aggregate amount of $119,443 which was substantially less than the aggregate damages originally claimed thereon.
 
 
 3
 Thereafter, on September 13, 1954, a motion was noticed in behalf of the plaintiffs in the Rodriquez and Smith actions to modify the restraining order to permit prosecution of those actions at law. The motion was supported by a stipulation purporting to reduce the respective amounts of the claims of those plaintiffs to figures such that the aggregate amount of all outstanding claims was reduced to $442,000. These figures, however, did not include any claims in behalf of nine other members of the crew who prior to September 13, 1954 had filed no claims.
 
 
 4
 The stipulation referred to recited: "The amount of each claim, [reduced] as stated above, will never be increased. No judgment or decree will be entered in any court in excess of any of the amounts set forth herein. Any claim of res judicata relevant to the issue of limitation of liability, based on a judgment or decree in any other court, is hereby waived." It was signed only by proctors for the claimants whose claims it purported to reduce. It was proffered as an exhibit annexed to the affidavit of Jacob Rassner, Esq., made in support of the motion to modify. In his affidavit Mr. Rassner recited that "he is of counsel for" the proctors for "Rodriquez and numerous other claimants in this proceeding" who have filed a civil action in this Court against petitioner Trinidad Corporation (Civ. 73-73). At the suggestion of the court a supplemental affidavit was later filed by Smith's attorney in charge of the prosecution of Civ. 75-152 reciting that "in connection with the motion" to modify the injunction Rodriquez' proctor "was authorized to act" for Smith's attorney "in so far as such application was concerned." There was no showing that any claimant either orally or in writing had expressly authorized a reduction of his claim as filed. And neither Mr. Rassner, as "counsel" to claimants' proctors, nor any proctor for any claimant expressly represented by writing or otherwise that he had authority to reduce the amount of a client's claim.
 
 
 5
 On November 5, 1954, Judge Clancy ordered, without condition or reservation, that the restraining order be modified "to permit the prosecution against the petitioner herein of two civil actions now pending in this court" identified as Civ. 74-73 and Civ. 75-152. From that order, the petitioner prosecutes this appeal.
 
 
 6
 Judge Clancy's memorandum decision shows that his action was predicated upon a prior decision of this court in Petition of Texas Co. (The Washington), 2 Cir., 213 F.2d 479, certiorari denied, Texas Co. v. U. S., 348 U.S. 829, 75 S.Ct. 52. That was a limitation case in which the claims filed, after the amount thereof had been reduced by stipulation, aggregated less by $350,000 than the fund in court. On motions by claimants so to modify the injunction as to permit the prosecution of their claims in other forums, this court held that the court below, while retaining jurisdiction of the limitation proceedings, properly lifted the restraint and thereby permitted the prosecution of the claims elsewhere in forums of the claimants' choice.
 
 
 7
 The appellant, in a powerful argument, has asked us to re-examine the Texas Company holding. It asserts that in a limitation proceeding involving multiple claims "the heart of this system is a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants," citing Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806. It stresses the pertinence of the following passage from the opinion in Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 47 S.Ct. 357, 359, 71 L.Ed. 612:
 
 
 8
 "The proceeding partakes in a way of the features of a bill to enjoin a multiplicity of suits, a bill in the nature of an interpleader, and a creditor's bill. It looks to a complete and just disposition of a many-cornered controversy, and is applicable to proceedings in rem against the ship, as well as to proceedings in personam against the owner; the limitation extending to the owner's property as well as to his person."
 
 
 9
 And appellant further cites Butler v. Boston & Savannah Steamship Co., 130 U.S. 527, 9 S.Ct. 612, 32 L.Ed. 1017; Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U.S. 578, 3 S.Ct. 379, 617, 27 L.Ed. 1038; The Scotland, 105 U.S. 24, 33, 26 L.Ed. 1001; Ex parte Slayton, 105 U.S. 451, 452, 26 L.Ed. 1066; and Just v. Chambers, 312 U.S. 383, 385-386, 668, 61 S.Ct. 687, 85 L.Ed. 903. It suggests that this court in deciding the Texas Company case may have overlooked these decisions. But in none of those decisions was there a consideration of the question presently raised, i. e., whether when the fund in court is adequate for payment in full of all the claims, the court should exercise its jurisdiction to effectuate and maintain a concourse.
 
 
 10
 It is, of course, true that in limitation cases in which the sum total of the damages as liquidated may exceed the fund available for the payment of claims, the concourse of all claimants in the limitation proceeding is a technique indispensable to the statutory objective, viz., a marshalling of claims. For in such a case, each claimant has an interest not only to enhance his own damages but also to hold to a minimum the damages allowed on competing claims: the greater the damages proved for a competing claim the less will be the proportionate share of the fund actually payable to another claimant under 46 U.S.C.A. § 184. In that situation, it is a matter of indifference to the owner how one claimant fares, vis-a-vis another. This feature explains the description, in Hartford Accident & Indemnity Co. v. Southern Pacific Co., supra, of such a proceeding as "a many-cornered controversy". In such cases, on the issues of the owner's liability and of its right to a limitation, the claimants have a common interest based largely on the same facts: but on the issue of their respective damages their interests are competing. The concourse is the statutory technique for the determination of these common and competing interests. In such cases, therefore, the concourse will not be disturbed — not even at the instance of the shipowner, as we held in The Quarrington Court, 2 Cir., 102 F.2d 916.
 
 
 11
 However, in cases in which the fund exceeds the total amount of damages which may be awarded, the "many cornered controversy" does not exist. On the one hand, the owner's right to a limitation becomes moot and, on the other hand, no occasion for a marshalling arises and the concourse is not necessary to protect one claimant from excessive claims by competing claimants. In such cases, this court has held that the limitation statute carries no power to enforce a concourse, thereby depriving claimants of a choice of forum otherwise available. The Aquitania, D.C., 14 F.2d 456, affirmed 2 Cir., 20 F.2d 457; Curtis Bay Towing Co. v. Tug Kevin Moran, Inc., 2 Cir., 159 F.2d 273; and Petition of Moran Transportation Corp., 2 Cir., 185 F.2d 386. The holding of Petition of Texas Company is no more than a logical development of that doctrine: it recognizes that, when application is made to relax a concourse previously granted, the court in the exercise of its discretionary powers must make a preliminary determination of the adequacy of the fund in court to pay in full all claims which may be allowed.
 
 
 12
 Generally, for purposes of such a determination the maximum damages originally sought on claims still pending will be taken as the measure of an adequate fund: the court will not look into the merits of the claims but will assume that the full damages sought may be awarded. But the Texas Company Petition rule recognizes that in the formulation of its discretion the court should give appropriate consideration to releases of claims theretofore filed and to the probability that additional claims may yet be filed. Nevertheless, the same case reaffirms our earlier holding that, in cases in which the fund is found adequate to obviate the need for marshalling, the limitation statute may not be taken as a grant of power, not otherwise existing in the limitation court, to enjoin a multiplicity of actions. It follows that neither the existence nor the possibility of multiple actions growing out of the maritime disaster which gave rise to the limitation proceeding is relevant to a determination of the adequacy of the fund.
 
 
 13
 In line with our prior decisions we again hold that, on a finding of an adequate fund made in the light of all relevant factors, on an application seasonably made it is a proper exercise of discretion to grant leave to prosecute a claim outside the concourse and that it would constitute an abuse of discretion to deny such an application and thus deprive the claimant of his choice of forum.
 
 
 14
 Turning to the particular case now before us, it is clear that the court below obtained jurisdiction over the limitation proceeding including jurisdiction to adjudicate in said proceedings all claims against the vessel and its owner. White v. Island Transportation Co., 233 U.S. 346, 34 S.Ct. 589, 58 L.Ed. 993; Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520. We also believe that the jurisdiction thus obtained on the filing of the petition was not ousted even if thereafter the claims were voluntarily reduced so that the sum total of the damages claimed was shrunk to a figure less than the amount of the fund in court. In Ex parte Slayton, 105 U.S. 451, 26 L.Ed. 1066, it was held that jurisdiction was obtained even prior to the filing of any claims. And it has also been held that subsequent reduction of claims to make the fund adequate does not disturb such jurisdiction. Anderson v. Alaska S. S. Co., 9 Cir., 22 F.2d 532; The John K. Gilkinson, D.C. S.D.N.Y., 150 F. 454; The Tolchester, D.C.Md., 42 F. 180.
 
 
 15
 However, properly to dispose of the motion to modify the injunction, as pointed out above, the holding of the Texas Company Petition required the judge below in the exercise of his discretionary powers to make a preliminary determination of the adequacy of the fund in the light of the situation as it had then developed. In the discharge of this task, to reflect the effect of settlements already made the judge should have deducted so much of the claims as were released by the settlements from the aggregate damages sought by all filed claims. To such an adjustment of the measure of adequacy the shipowner has no standing to complain: he has no right to insist that adequacy of the fund should be measured by claims from which, through his settlements, he has obtained a release. The adjustment is fair to claimants who, to escape the concourse, assert that the fund is adequate for all. Such claimants, if they succeed in escaping the concourse, necessarily waive such protection as it affords to challenge the reasonableness of out-of-court settlements made with other claimants. Only those claiming a share in an inadequate fund have need and right to protect their participative rights as against competing claimants.
 
 
 16
 The Judge should also have given appropriate consideration to the probability that additional claims might yet be filed. For the three-year statute of limitations applicable to personal injury actions under the Jones Act had not yet run. 46 U.S.C.A. § 688; 45 U.S.C.A. § 56, Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242. However, the motion papers below showed that over two years had elapsed since the disaster and since the date set in the monition for filing of claims. In view of this time lapse, the mere fact that some of the seamen aboard at the time of disaster had not yet filed claims the judge might well have appraised as a factor too remote to affect the adequacy of the fund. If correspondence with these seamen, or other information, submitted by the owner had suggested that additional claims were still imminent, the subject-matter should have been given appropriate consideration. But no such material is to be found in the motion papers. Certainly, we cannot say that in the situation here presented, that factor was erroneously overlooked.
 
 
 17
 It is not clear from the brief memorandum decision of the judge below that he understood that a proper disposition of the motion required him, as an exercise of discretion, to make a preliminary determination of the adequacy of the fund. We assume, however, for purposes of this appeal that he recognized this responsibility and that his order imports a finding that the fund was adequate. We hold, however, that the record below failed to support such a finding. Plainly the fund was not adequate if measured by the damages originally claimed. The unilateral stipulation appended to appellees' motion papers was the only basis advanced for a downward modification of that measure. It is true that that stipulation purported to be a partial release of the designated claims as filed. But as Judge L. Hand said in Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 759, 164 A.L.R. 387, "It is well settled in this country that an attorney has no implied authority to compromise a claim." The observation necessarily extends to the partial release which is an incident to the compromise. And, of course, if the lawyer's representative capacity is not sufficient basis for the implication of power in the lawyer to give a release, from the mere assertion of power such as was made by these proctors such authority may not be implied. If viewed as a congerie of releases, the stipulation, so far as appears, was subject to possible attack not only on the ground of lack of authority but also for lack of consideration.
 
 
 18
 Moreover, the vulnerability of the stipulation is accentuated by the facts of its background and content. When it was filed, the claims greatly exceeded, in the aggregate, the amount of the fund with the result that there was a conflict of interests between rival claimants, as pointed out above. Yet two of the firms which signed the stipulation purported to speak each as proctor for several claimants. Doubtless a proctor or attorney may represent two or more clients with conflicting interests, if such representation is consented to by the clients. But such consent may not be implied; it must be suitably attested.
 
 
 19
 The apparently discriminative nature and the drastic dimensions of the reductions which the stipulation purports to accomplish, further emphasize the need in the present setting for consent to, and authority for, the action taken. For example, Rodriquez' claim in the limitation proceedings was $150,000: by the original stipulation it was reduced to $100,000, or by 33%; Broknis' claim of $200,000 was reduced by 62% to $75,000; and Hindsley's claim of $125,000 was reduced by about 93% to $8,000. For its bearing on apparently discriminative treatment it also may be noted that when the reductions purportedly accomplished by the original stipulation proved insufficient to bring the total amount claimed within the fund, a supplemental stipulation signed by the same proctors purported further to reduce the Rodriquez claim by 2.5%, from $100,000 to $97,500, while other claims were cut by 25%, from $8,000 to $6,000.
 
 
 20
 We find no basis in the record for excluding as remote the possibility that occasions may arise for attempted attacks on the enforceability of the stipulation as a multiple release. To illustrate: a claimant who "in writing under oath," Admiralty Rule 52, 28 U.S. C.A., stated his claim at $125,000 may be awarded a verdict in excess of the $6,000 to which his proctor says the claim is reduced. Cf. Couto v. United States, 2 Cir., 203 F.2d 456. At that stage, if the shipowner advances the stipulation as a partial release it is not unlikely that the seaman-claimant will attack the release on various grounds contending, perhaps, that its discriminative effect was the product of a lawyer representing adverse interests. Especially in view of the traditional solicitude of admiralty toward seamen we cannot exclude as remote the possibility of success in such an attack. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Kelcey v. Tankers Company, 2 Cir., 217 F.2d 541; The Standard, 2 Cir., 103 F.2d 437. Cf. Sitchon v. American Export Lines, 2 Cir., 113 F.2d 830. In the situation here, the fund so narrowly exceeds the aggregate damages as measured by the stipulation (we roughly compute the excess at only about $2,500) that a single successful attack on the stipulation might make the fund inadequate. We, therefore, reiterate our conclusion that on the record below it could not properly be found that the fund was adequate.
 
 
 21
 This conclusion, on the surface at least, may seem inconsistent with the Per Curiam opinion by this court on the petition to recall and amend the mandate in the Petition of Texas Company case, 2 Cir., 220 F.2d 744, in which the court, without explanation, overruled a contention of counsel that a stipulation in all respects similar to that used here should be signed and sworn to by the claimants. However, in that case, as appears from Judge Weinfeld's opinion below, D.C., 116 F.Supp. 915, 917, the court was apparently satisfied that a $200,000 reduction of the claim of the United States might safely be treated as a valid release. As a result the fund was adequate without the stipulated reduction of other claims and perhaps this court thought it had no need to weigh the impact of that stipulation on the situation there presented. Certainly it gave no discussion to the vulnerability of the stipulation.
 
 
 22
 Although the order appealed from must be reversed, it does not necessarily, as a matter of law, follow that another motion to lift the injunction is foreclosed. To the extent that such a motion shall be predicated on unconditional partial releases, signed and sworn to by the claimants in person, each which release shows on its face (a) the amounts of all claims filed and (b) the amounts of said partial releases, it would lie within the bounds of judicial discretion to consider in the light of the situation then presented the effect of such releases on the adequacy of the fund. If, giving full effect to such releases the fund is found adequate, the vulnerability even of such releases suggests that any order relaxing the concourse should be limited to permit the prosecution of the claims only to judgment: the injunction in so far as it enjoins collection of the judgment elsewhere than in the limitation proceedings should be continued.[1] Moreover, as a safeguard against remote and unforeseeable contingencies, any order relaxing the concourse should contain an express reservation of jurisdiction to re-establish the concourse and to adjudicate the owner's right to a limitation in the event that the fund should ultimately prove to be inadequate, Petition of Texas Company, supra, with a provision that in no event shall the claimant recover from the fund an amount in excess of his claim as reduced by his partial release until all other claims have been satisfied in full. Cf. Petition of Moran Transportation Corp., supra. And the issuance of the order should be conditioned on the filing by the claimant of written consent to its terms.
 
 
 23
 It will be observed that a seasonable relaxation of the concourse accompanied by the safeguards specified above need work no hardship on the claimants in admiralty who are content to litigate their rights in the concourse. For if the fund has been found to be adequate there will be no need for the limitation court to withhold payment of its own awards until the claims which it has relieved of the concourse have been reduced to judgment.
 
 
 24
 We conclude with this final caveat as to the scope of this opinion. In holding that the limitation statute confers no power on the district court to maintain a concourse once it has found that the fund is adequate, we do not hold that the court is without power derived from other sources in a proper case to enjoin a multiplicity of actions. For this appeal has been pitched solely on the effect of the limitation statute.
 
 
 25
 Reversed and remanded.
 
 
 26
 Judge BURKE concurs in this result.
 
 
 
 Notes:
 
 
 [1]
 This suggested limitation on an order lifting the injunction is not inconsistent with the opinion in Waldie Towing Co., Inc. v. Ricca, 227 F.2d 900, decided by another panel of this court on December 9, 1955. On the contrary, it supplements the achievement of the obvious objective of that ruling