**RIVER TERMINALS CORPORATION, Appellant,**

v.

**SOUTHWESTERN SUGAR & MOLASSES COMPANY, Appellee.**

**No. 16699.**

United States Court of Appeals
Fifth Circuit.

April 9, 1958.

Selim B. Lemle, New Orleans, La., Carl G. Stearns, Houston, Tex. (Lemle & Kelleher, New Orleans, La., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., on the brief), for River Terminals Corp., appellant.

P. M. Flanagan, Amos L. Ponder, Jr., New Orleans, La., George L. Varian, New York City, for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment for libelant for the loss of its cargo of molasses shipped by it on its own barge under tow of libelee-appellant. The libel claimed, and the trial court found, that the barge sank and its cargo was lost as a result of negligent acts of appellant in navigation or management of the tow.

The libelee asserted a defense which, if available to it, makes unnecessary consideration of the case on the merits. This defense is: Appellant was a certificated common carrier under the terms of Part III of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq., which was required to, and which did, file tariff schedules with the Interstate Commerce Commission, and all of whose movements of cargo must be in accordance with its certificate and must, under the statute, conform to its filed tariffs, and that the tariffs applicable to this movement relieved it from all liability for negligence or otherwise.

The trial court, in its findings of fact, said:

"This movement, according to the bill of lading issued by River on September 17, 1944, [the day the shipment commenced] was subject to River's tariff on file with the Interstate Commerce Commission, which tariff contained the following provisions:

"'When shipments are transported in barges furnished by owner, shippers, consignees or parties other than the carrier, such barges and (or) cargoes will be handled at owner's risk only, whether the loss or damage is caused by negligence or otherwise.'"

Clearly, therefore, unless this provision of the tariff, which, of course, becomes a part of the contract, is to be ignored, the appellant is entitled to its benefit. As to whether the quoted provision of the tariff is valid or is void as against public policy we must at once recognize that in the recent case of Mississippi Valley Barge Line Company v. T. L. James & Co., Inc., 5 Cir., 244 F.2d 263, 267, we held such a provision void and of no effect. In a case which, so far as is germane to the present issue, was identical with this one, the defense was made that both the tariff and the bill of lading (there issued several weeks after the damage) relieved the towing company of liability. Referring to Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, a case involving a private contract of towage, in which the parties by contract sought to relieve the tower from results of its own negligence, but which efforts the Supreme Court, in a 6–3 opinion, struck down as against public policy, this Court in an opinion participated in by the writer of this opinion, said:

"It is sufficient to say that the validity of this clause has been definitely and conclusively settled against it in the Bisso case, and that, as pointed out in the opinion of the district judge below and in the briefs of the appellees here, the fact that this illegal clause is embodied in a tariff cannot make it legal."

Recognizing full well the unsettling effect of differing decisions within the

same circuit in similar cases, and with every deference to the views of our colleagues who decided the Mississippi Valley Barge Line Company case, we deem it to be our clear duty to consider carefully what the law is on this important and far-reaching question. If we conclude that the law was incorrectly stated by us previously, it is our duty to proceed in this cause as we believe the law requires.

■ There is an important factor in cases of this kind that was not commented on by this Court in the earlier case. It looms so large in the consideration we now give to this case that we think it likely that failure by the Court to discuss it in the Mississippi Valley opinion indicates that it was overlooked. That is the rule frequently stated by the Supreme Court that "Until changed, tariffs bind both carriers and shippers with the force of law." Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953; Crancer v. Lowden, 315 U.S. 631, 635, 62 S.Ct. 763, 86 L.Ed. 1077.

■ There is then the equally important principle, also not discussed in our earlier opinion, that when tariffs embody terms whose initial adoption or subse-quent modification involves issues of transportation policy, they ought not to be ignored, set aside, or otherwise set for naught, except after consideration by the Interstate Commerce Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by the act. United States v. Western Pacific Railway Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. An illustration in which the Supreme Court applied this principle is General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, and its subsequent appearance sub. nom. El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053. And see, for cases in which the approved procedure was followed in the first instance, Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 100 L.Ed. 173, and Lowden v. Simonds-Shield-Lonsdale Grain Co., supra.

■ For the reasons made amply clear in Part III of the Interstate Commerce Act, 49 U.S.C.A. § 901 et seq. Congress has confided to the Interstate Commerce Commission the devising and controlling of a regulatory scheme over the use of water carriers in foreign and domestic commerce. Under this law [1]

---

1. Sections 306(a) and 306(c) of Part III of the Interstate Commerce Act (49 U.S. C.A. Section 906):

"(a) Every common carrier by water shall file with the Commission, and print, and keep open to public inspection tariffs showing all rates, fares, charges, classifications, rules, regulations, and practices for the transportation in interstate or foreign commerce of passengers and property between places on its own route, and between such places and places on the route of any other such carrier or on the route of any common carrier by railroad or by motor vehicle, when a through route and joint rate shall have been established. Such tariffs shall plainly state the places between which property or passengers will be carried, the classification of property or passengers and, separately, all terminal charges, or other charges which the Commission shall require to be so stated, all privileges or facilities granted or allowed, and any rules or regulations which in anywise change, affect, or determine any part or the aggregate of such rates,

fares, or charges, or the value of the service rendered to the passenger, shipper, or consignee.

\* \* \* \* \*

"(c) No common carrier by water shall charge or demand or collect or receive a greater or less or different compensation for transportation subject to this part or for any service in connection therewith than the rates, fares, or charges specified for such transportation or such service in the tariffs lawfully in effect; and no such carrier shall refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation affecting the value thereof except such as are specified in its tartiff: Provided, That the provisions of sections 1(7) and 22 of Part I (which relate to transportation free and at reduced rates), together with such other provisions of such part (including penalties) as may be necessary for the enforcement of such provisions, shall apply to common carriers by water."

every common carrier (and for the purpose of this discussion this includes towers as well as other carriers) is required to file and keep on file with the Interstate Commerce Commission its tariff "showing all rates, fares, charges, classifications, rules, regulations, and practices for the transportation in interstate or foreign commerce * * * between places on its own route," which shall plainly state, among other things, "any rules or regulations which in anywise change, affect, or determine any part of the aggregate of such rates, fares, or charges, or the value of the services rendered to the passenger, shipper, or consignee." No carrier is permitted, under the Act to depart, in the furnishing of carriage, from its published tariffs.

The Commission may, under the Act, permit the filed tariffs to become effective or it may suspend them temporarily and either on its own motion or on the motion of an aggrieved party, inquire into the reasonableness and legality of any such rate or charge. Upon the resolution of any such inquiry, the Commission makes its order which is binding and final unless brought in question in the manner provided in 28 U.S.C.A. §§ 2321, 2323. This is by suit against the United States and the Interstate Commerce Commission in which any interested party may intervene. It is tried by a statutory three-judge district court from which there is a direct appeal to the Supreme Court.

In the exercise of its statutory power the Commission permitted the appellant to file its questioned tariffs which, so far as this record shows, became immediately effective. The record does not disclose that either on the objection of shipper or otherwise any complaint or other challenge has ever been made with the Commission attacking the validity of the tariffs. We are asked to hold that, regardless of the circumstances prevailing in the towing industry which caused the appellant to fix its freight charges on the basis of appellee's assuming all the risks of negligent navigation of the tower, all

of which must be assumed to have caused the Commission to "approve" the tariffs and which were deemed sufficiently acceptable to shippers as to prevent them from filing a complaint thereabout, there is a public policy that outlaws the exculpatory provision as a matter of law. This it is said, follows from the Court's decision in Bisso, supra, outlawing such a clause in a private contract of towage.

■ We think that when Congress has given to the Commission the extensive supervisory and regulatory power over the shipping industry with special responsibilities as to the prevention of monopolistic practices, and when the Commission permits the establishment of rates which limit the liability of carriers (presumably because there are, or may be required to be at the instance of a complaining shipper, alternative rates which place full liability on the tower) it has done so in the proper discharge of its responsibility to shipper, carrier and the public alike, and no overweening policy to invalidate one of the terms of such a tariff arises. Certainly not as a matter of law and without benefit of the Commission's initial inquiry and findings relating to the matter.

■ As is indicated in the concurring opinion, also expressed somewhat differently in the dissenting opinion in the Bisso case, the presence or absence of an overriding public policy depends on facts and circumstances that in litigation between private parties must be developed in the record:

"It may be fairer in the long run to let the tugboat operator free himself (by contract) from his own negligence and transfer the liability to the shippers who employ his services. But the very statement of the problem raises large questions of policy on which the present records throw no light. We would have to know much more about the economics and organization of the tugboat industry than we are offered here to fashion a new rule." 349 U.S. 85, 97, 75 S.Ct. 629, 636.

And see the discussion on the public policy aspect of the private towage case 349 U.S. at page 117, 75 S.Ct. at page 646 (dissenting opinion).

It would seem that as to common carriers, as to which Congress has given regulatory power to the Commission, the Commission's actions with respect to the terms of carriage should not be upset by the courts without their first having the factual background mentioned above first examined by the Commission and its relation to the assailed clause inquired into by it.

That there is no general public policy forbidding the exculpation of water carriers for their negligence is made amply apparent by the enactment by Congress more than half a century ago of the Harter Act,[2] which in effect relieves carriers of liability for error or fault in navigation or management of the vessel if they have provided a seaworthy craft. Here appellant claims to be entitled to that very protection, since it says it is such owner of a vessel as is comprehended by the Harter Act. Without deciding that issue, since we think we do not reach it,[3] but assuming for the purpose of this discussion that the terms of the Act do not apply here because this is to be considered a movement of towage rather than "transportation of property," the existence of the law is not consistent with a theory that at all times and under all circumstances it is against public policy for water carriers to be free of liability for their own negligence. We think the Supreme Court did not so decide in Bisso and we think that such exemption from liability may, within the purview of the Interstate Commerce Act, be one of the matters with which the Commission may deal in approving rates, charges and services of the carriers whose activities it has the duty to regulate. In any event we conclude that we should not hold such a part of a published tariff void until the parties have proceeded administratively to have it set aside. The method of such administrative determination is clearly set forth in General American Tank Car Corp. v. El Dorado Terminal Co., supra, and see United States v. Western Pacific R. Co., supra.

Nor do we think that anything in Section 920(d)[4] of Part III of the In-

2. "§ 192. Limitation of liability for errors of navigation, dangers of the sea and acts of God. If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service." 46 U.S.C.A. § 192.

3. It is to be noted that in Mississippi Valley Barge Line Co. v. James, supra, on a slightly different record, we did hold that this statute was not applicable because towage rather than affreightment was involved. The Harter Act does not apply to towage and the difference here is that the trial court found as a fact that this movement was under the terms of a bill of lading subject to tariffs that were clearly adjusted to affreightment, but then concluded that this too was towage.

4. "§ 920. Repeals.

    \*     \*     \*     \*     \*

"(d) Nothing in this chapter shall be construed to affect any law of navigation, the admiralty jurisdiction of the courts of the United States, liabilities of vessels and their owners for loss or damage, or laws respecting seamen, or any other maritime law, regulation, or custom not in conflict with the provisions of this chapter."
49 U.S.C.A. § 920(d).

terstate Commerce Act requires any different holding. It provides only that none of the provisions of the statute shall of themselves be held to work any change in liabilities, etc. This is not to say that the Act does not authorize the Commission to permit the parties, by their contracts of carriage, when approved by the Commission, to make such changes in their respective liabilities.

The judgment is reversed in order to afford the appellee reasonable opportunity to seek administrative action before the Commission to test the validity of the challenged provision, otherwise to give full effect to the exculpatory clause and for further proceedings not inconsistent with this opinion.

Reversed and remanded.