PERSHING AUTO RENTALS, INC., Appellant,

v.

William C. GAFFNEY et al., Appellees.

No. 18075.

United States Court of Appeals
Fifth Circuit.

June 15, 1960.

David S. Batcheller, James L. Armstrong, III, David W. Dyer, Miami, Fla., for appellant; Smathers, Thompson & Dyer, Miami, Fla., of counsel.

Sam Daniels, Herbert L. Nadeau, Miami, Fla., for appellees.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

It has taken 109 years for this case to materialize. For the first time in this long continuance of the Act concerning limitation of shipowner's liability[1] which, for our purposes, remains the same as originally enacted in 1851, a simple question is posed. In a multiple-claim-inadequate-fund limitation proceeding may the admiralty court modify its traditional injunction to permit some of the claimants to establish their claims initially in a state common law court?

Before we get to that we must take notice of a possible lack of jurisdiction. The order under review did not decide a petition for limitation of liability, nor was it an appealable interlocutory order "determining the rights and liabilities of the parties to admiralty cases." 28 U.S.C.A. § 1292(a) (3). It was simply an order modifying the injunction previously entered to permit two of the four claimants to proceed with trial of their state court suits for the injuries growing out of this marine casualty. We do not have to decide whether this is an occasion for the exercise of our undoubted right and duty to reexamine a former decision when its correctness has been brought sharply into question. River Terminals Corp. v. Southwestern Sugar & Molasses Co., 5 Cir., 1958, 253 F.2d 922 at pages 924–925, 1958 A.M.C. 1534, 1536, 1959, 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334, 1959 A.M.C. 1631; 5 Cir., 1960, 274 F.2d 36. Nor need we undertake to see whether there may be some distinguishing factors. For accepting our prior decisions, Stark v. Texas Company, 5 Cir., 1937,

1. 46 U.S.C.A. §§ 181–195, especially §§ 183, 184, 185, 188. See also Rules in Admiralty & Maritime Cases 51–54.

88 F.2d 182, 183, 1937 A.M.C. 558, 559; Postal S.S. Co. v. International Freighting Corp., 5 Cir., 1943, 133 F.2d 10, 1943 A.M.C. 275, as holding to the contrary, we think that Lake Tankers Corp. v. Henn, 1957, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, 1957 A.M.C. 1165, in this context at least, requires that we no longer adhere to them. While the point was not there specifically urged, Henn was a review of a decision of the Second Circuit [2] of the very type of modification of the limitation of liability injunction which that Circuit had consistently held [3] was appealable as the granting, refusal, or modification of an injunction under 28 U.S.C.A. § 1292(a) (1). As appealability of interlocutory orders is a matter of almost allergical sensitiveness to all appellate courts, the action of the Supreme Court in its authoritative discussion of the substantive merits of this limitation of shipowner's liability procedural problem argues convincingly that that Court regards orders of this kind appealable. We must, therefore, treat the merits.

The petition for exoneration from and limitation of liability was filed by petitioner as owner of the 26-foot M/V Pershing. On September 28, 1957, the boat was laying in a public dock in Dade County, Florida, and while the four claimants were aboard apparently doing some work on the engine—whether authorized or not is highly disputed—she exploded, became a total loss and injured several persons severely. An ad interim stipulation for $500 was filed, representing a most liberal appraisal of her value. As has each judge to whom like sheaves of papers have come ex parte, the District Judge in the tradition of the admiralty signed three orders where one would have done.[4] Of most importance was the usual order which stayed and restrained institution or prosecution of any other suits pending hearing and determination of the limitation proceeding.

Within the prescribed time claims and answers were filed by four claimants through two sets of proctors for a grand total of $558,000.[5] It is an understatement to remark that the claims and answers of each disputed most vigorously the petition's basic allegations of absence of neglect or fault and, more important, the lack of privity on petitioner's part.

Nearly two years later, two of the claimants, Stein and Smithline, note 5, supra, through their proctors moved for a modification of the injunction, note 4, supra, to permit those claimants to proceed further with their actions then pending in the Florida state court against petitioner as well as other undisclosed defendants. The proposed protective stipulation was indeed a vague one [6] and apparently was so considered

2. In re Petition of Lake Tankers Corp., 2 Cir., 1956, 232 F.2d 573; 235 F.2d 783, 1956 A.M.C. 1018, 1957 A.M.C. 184.

3. This was first announced in W. E. Hedger Transp. Corp. v. Gallotta, 2 Cir., 1944, 145 F.2d 870, 1944 A.M.C. 1462. This has been followed consistently. Curtis Bay Towing Co. v. The Tug Kevin Moran, 2 Cir., 1947, 159 F.2d 273, 1947 A.M.C. 51; A. C. Dodge, Inc. v. J. M. Carras, Inc., 2 Cir., 1955, 218 F.2d 911, 1955 A.M.C. 706; Blackler v. F. Jacobus Transp. Co., 2 Cir., 1957, 243 F.2d 733. The Third Circuit on the basis of these cases has followed suit. Petition of Oskar Tiedemann & Co., 3 Cir., 1958, 253 F.2d 233, 1958 A.M.C. 1887. The Sixth Circuit has entertained such an appeal on its merits, but without discussion of the appealability of the order. Great Lakes Dredge & Dock Co. v. Lynch, 6 Cir., 1949, 173 F.2d 281, 1949 A.M.C. 986.

4. These were the orders for ad interim stipulation, for issuance of the monition, and an injunction.

5.

| Claimant | Attorney | Amount |
|---|---|---|
| William Gaffney | Anderson & Nadeau | $ 8,000 |
| Daniel D. Diefenbach | Anderson & Nadeau | $ 50,000 |
| Alan Smithline | Nichols, Gaither, etc. | $250,000 |
| David I. Stein | Nichols, Gaither, etc. | $250,000 |

6. The motion to modify the previous injunction was "with the understanding and stipulation that no execution would issue on any judgment received in such action against the Petitioner * * * pending the outcome and final disposition of this limitation of liability action * * *."

by the District Judge. For in his order which "modified [the original injunction] as to said claimants * * * only to said extent," the Court spelled out further conditions [7] to which these two claimants would have to subscribe (and later did) notwithstanding these still left much to be desired.

We would have considerable doubt that the stipulation prescribed in the Court's order modifying the injunction, see note 7, supra, was adequate.[8] And accepting to the fullest extent the most favorable implication of the decisions of the Second Circuit in this field, we would likewise doubt that some, but less than all, of the claimants can attempt to stipulate where, as here, the remaining claims themselves greatly exceed the limitation fund.[9] On these points, we might reverse without more. But we think that in the interest of orderly administration to advance the trial of the limitation proceeding which is so inevitable, we should determine this on its substantive correctness, not possible procedural imperfections.

■ If an admiralty court in a multiple-claims-inadequate-fund case may permit the claimants first to try the issue of liability vel non and damages in every claim in court actions outside of the limitation proceeding during which time the limitation case will be in a suspensive state of limbo, there will be little, if anything, left of the statutory scheme creat-

7. The order recited that leave to proceed in the state court suits against petitioner was granted "Provided and Conditioned upon the filing with this Court of a stipulation of each of the claimants reciting therein that all claims of res adjudicata relative to the issue of petitioner's rights to limit liability be waived if passed upon by the State Court and further that if in the event judgment is rendered by said Court or Courts, that no execution issue except and only upon Order of this Court, and in accordance with and in proportion to this Court's ruling, if any, in the pending Limitation proceeding."

8. The order does stipulate that the claimants waive res adjudicata "relative to the issue of petitioner's right to limit liability" but the phrase immediately following that waiver—"if passed upon by the State Court"—reflects an acquiescence, if not active permission, for the claimants to try this issue or each of its essential ingredients, in the state court proceeding. But the law clearly recognizes that the shipowner is entitled as a matter of right to exclusive determination of this question by the admiralty court. Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, 1931 A.M.C. 511, and more pointedly its sequel, Ex parte Green, 1932, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212, 1932 A.M.C. 802, followed scarcely a year later by Larsen v. Northland Transp. Co., 1934, 292 U.S. 20, 54 S.Ct. 584, 78 L. Ed. 1096, 1934 A.M.C. 501, make this quite plain. See also Petition of Red Star Barge Line, 2 Cir., 1947, 160 F. 2d 436, 438, 1947 A.M.C. 524, 527.

9. In Petition of Trinidad Corp. (The Fort Mercer), 2 Cir., 1955, 229 F.2d 423, 1956 A.M.C. 872, the Second Circuit reversed a modification permitting some of the claimants to pursue state court actions. The so-called stipulation by one of the proctors was seriously questioned by the Court of Appeals as being either on the litigants represented by him or on those represented by other counsel. Here the claimants Gaffney and Diefenbach whose claims aggregate $58,000, note 5, supra, did not join in this motion. As to them, the case stands for trial and petitioner not only may, but must, proceed with the trial and submission in the admiralty court of the issue of the right to limitation. Petitioner is required to try this issue but one time in one proceeding. And since claimants Smithline and Stein are to be bound by that admiralty determination, they should not be relieved of the obligation of trying that issue in the limitation case at the one and only time it is to be tried. This is unlike a situation where, after stipulation by some of the claimants, the total amount of claims is less than the limitation fund. Those claimants content with the admiralty jurisdiction may nevertheless have their claims adjudicated in the limitation case. This was recognized in Petition of Trinidad Corp., supra, 229 F. 2d 423, 431, 1956 A.M.C. 872, 881. The distinction is vital: there being no claims in excess of the limitation fund, there is no question of the right to limit. Here, all four claimants, both inside and outside of the limitation proceedings vigorously challenge the right to limit.

ed by Congress and implemented by Admiralty Rules contemplated in the statute. Because this is about all that is left now. No longer the occasion for lamentations, Langnes v. Green, note 8, supra, permits the claimant in a single claim situation after appropriate protective stipulations to proceed elsewhere reserving exclusive final determination of the right to limitation (and amount of the fund) to the admiralty court. Likewise, in multiple-claim situation where the total of all of the claims does not exceed the limitation fund, any or all of the claimants may under suitable stipulation litigate elsewhere. All that is left, then, is the case of multiple claims which exceed the limitation fund[10] and in which the right to limit is disputed.

■ If in this multiple-claim-inadequate-fund situation the admiralty court may do so where there are four claims growing out of the destruction of a motorboat, it would be equally free to do so when faced with an Andrea Doria-Stockholm collision or like spectacular maritime catastrophe. Reminiscent of these would be the Morro Castle, the occurrence of which has considerable relevance. Although it aroused intense public and governmental interest in the field of legal liabilities for seagoing disasters leading to the 1935–1936 Amendments concerning the time for commencement of limitation proceedings, the amount available for certain types of claims and a broadening of privity and knowledge as to certain actions, no effort was made by Congress to tamper with the tradi-

tional format of all of the claims being determined in a single proceeding.[11]

In behalf of such a startling result, the claimants urge only that the notion of a concursus—on the analogy of an equitable bill to avoid multiplicity of suits—so often stressed in earlier opinions of the Supreme Court has now lost much favor. But granting the correctness of this approach, as does the approval in Lake Tankers Corp. v. Henn, 1957, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, 1957 A.M.C. 1165, of this critical analysis by the Second Circuit of the purpose of the limitation of liability act, there is nothing in this thesis that remotely suggests that an admiralty court may send the claimants elsewhere when the multiple claims exceed the fund. On the contrary, the idea expressed in these many cases from the Second Circuit[12] is that a concourse is needed precisely when the claims either exceed the fund or there is an arguably reasonable apprehension that they will.

That Court made this plain on several occasions. "We have several times announced the principles which we think must apply here: Absent an insufficient fund (1) the statutory privilege of limiting liability is not in the nature of a *forum non conveniens* doctrine, and (2) the statute gives a ship-owner, sued in several suits * * * no advantage over other kinds of defendants in the same position. Concourse is to be granted 'only when * * * necessary in order to distribute an inadequate fund.' The 'purpose of limitation proceedings is not

---

10. It is even more graphic. Here each claim, see note 5, supra, exceeds the fund by a ratio running from 16 to 1 to 500 to 1.

11. See Gilmore & Black, The Law of Admiralty (1957) § 10–33 (especially note 135 at page 717), § 10–9, § 10–14, § 10–15.

12. To the cases cited in note 3, supra, should be added these. Petition of Texas Co. (The Washington), 2 Cir., 1954, 213 F.2d 479, 1954 A.M.C. 1251, certiorari denied sub-nom. Texas Co. v. United States, 1954, 348 U.S. 829, 75 S.Ct. 52, 99 L.Ed. 653; Petition of Moran Transp.

Corp., 2 Cir., 1950, 185 F.2d 386, 1951 A.M.C. 66, certiorari denied, 1951, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687; Petition of Trinidad Corp. (The Fort Mercer), 2 Cir., 1955, 229 F.2d 423, 1956 A.M.C. 872; In re Wood's Petition, D.C. S.D.N.Y.1954, 124 F.Supp. 540, 1954 A.M.C. 1287, 2 Cir., 1956, 230 F.2d 197, 1956 A.M.C. 547; Petition of Lake Tankers Corp., 2 Cir., 1956, 232 F.2d 573, 1956 A.M.C. 1018, affirmed en banc, 235 F. 2d 783, 1957 A.M.C. 184, affirmed Lake Tankers Corp. v. Henn, 1957, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246, 1957 A.M.C. 1165; The Aquitania, 2 Cir., 1927, 20 F.2d 457, 1927 A.M.C. 1320.

to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full.' " Petition of Texas Co., supra, 2 Cir., 213 F.2d 479, at page 482, 1954 A.M.C. 1251 at 1255. This was shortly spelled out in even plainer terms. "It is, of course, true that in limitation cases in which the sum total of the damages * * * may exceed the fund available for the payment of claims, the concourse of all claimants in the limitation proceeding is a technique indispensable to the statutory objective, viz., a marshalling of claims. * * * In such cases * * * the concourse will not be disturbed * * *." Petition of Trinidad Corp., supra, 229 F.2d 423, at page 428, 1956 A.M.C. 872 at pages 875–876. And the Court In re Wood's Petition, 2 Cir., 1956, 230 F.2d 197, 1956 A.M.C. 547, affirmed a refusal to modify the injunction in a multi-claim-no-fund case. "In the present case the nonexistence of a fund makes consideration of the owner's petition for limitation primary." 230 F.2d 197, footnote 11 at page 200, 1956 A.M.C. footnote 11 at page 550.

Even more decisive is like language of the Supreme Court in Henn, supra, approving the Second Circuit's approach. "It is, therefore, crystal clear that the operation of the Act is directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight. And * * * where the fund created pursuant to the Act is inadequate to cover all damages and the owner has sought the protection of the Act the issues arising from the disaster could be litigated within the limitation proceeding. Otherwise the purpose of the Act, i. e., limitation of the owner's liability, might be frustrated. Only in this manner may there be a marshalling of all of the statutory assets remaining after the disaster and a concourse of claimants." Lake Tankers Corp. v. Henn, supra, 354 U.S. 147, at page 151, 77 S.Ct. 1269, at page 1272, 1 L.Ed.2d 1246, at page 1250, 1957 A.M.C. 1165. The Court contrasts this with the multiple-claim-adequate-fund situation. "On the other hand, where the value of the vessel and the pending freight, the fund paid into the proceeding by the offending owner, exceeds the claims made against it, there is no necessity for the maintenance of the concourse." 354 U.S. at page 152, 77 S.Ct. at page 1272, 1 L.Ed. 2d at page 1250, 1957 A.M.C. 1165. This was highlighted by the unusual adoption, limited but precise, of Mr. Justice Frankfurter's opinion in Maryland Casualty Co. v. Cushing, 1954, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, 1954 A.M.C. 837. Of this the Court had this to say: "The language in one opinion [13] to the effect that concursus is 'the heart' of the limitation system therefore refers to those cases where the claims exceed the value of the vessel and the pending freight. In that event, as we have pointed out, the concursus is vital to the protection of the offending owner's statutory right of limitation." 354 U.S. at page 154, 77 S.Ct. at page 1273, 1 L.Ed. 2d at page 1252, 1957 A.M.C. at page 1170.

The wisdom of this conclusion is readily established by this case. If the briefs do not, the argument certainly disclosed that in the adjudication of liability vel non in the state court proceedings, the nature of this casualty was such that the acts relevant to the issue of privity and knowledge of petitioner would inevitably be involved. At the same time when it came to trying the admiralty proceedings —which is likewise inevitable since at least two claimants are still in it and would be unaffected by verdicts or judg-

---

13. This has reference to the opinion of Mr. Justice Frankfurter speaking for four members of the Court. "The heart of this system is a *concursus* of all claims to insure the prompt and economical disposition of controversies in which there are often a multitude of claimants."

Maryland Casualty Co. v. Cushing, supra, 347 U.S. 409, 415, 417, 74 S.Ct. 608, 611, 98 L.Ed. 806, 814, 1954 A.M.C. 837, 842. See also Gilmore & Black, The Law of Admiralty, § 10–41, and also §§ 10–17 through 10–19.

ments adverse to the state court plaintiffs—the admiralty court would have to retry the whole case again. In other words, the state court trial of the issues sometimes permissibly open to it could not avoid trial of the ingredients of the issue reserved exclusively for the admiralty. At the same time the admiralty court in subsequently trying that issue could not escape a retrial of the issues of negligence found by the state court verdict and judgment. It would have to retry these to determine whether petitioner had sufficient complicity to constitute privity and knowledge. Trial of the state court action would hinder, not aid, and would result in three trials where but one might do.[14]

■ We suspect that back of this strenuous effort to get the right to try these actions first in the state court is the apprehension that unless it is done in this fashion the plaintiff-claimants will be irrevocably denied their right to jury trials even though they succeed in their confident expectation of defeating limitation on the merits. But this is a *mis*apprehension erroneously deduced from the acknowledged power of the admiralty court to adjudicate the whole case and grant full relief even though limitation is denied.[15] This is a protection to those compelled under the moni-

tion and restraining orders to litigate in an unchosen forum. The claimants are the ones to determine whether such full relief from the admiralty is desired or needed. If they do not desire it, the admiralty court in its decree denying the right to limitation can make certain that they are free to pursue the petitioner in any other forum having requisite jurisdiction. This is precisely the holding of the Second Circuit in In re Wood's Petition, supra, 230 F.2d 197, at page 199, 1956 A.M.C. 547 at 549. Such a situation would also demonstrate that in amphibious adjudication, it may not always be sauce for goose and gander alike. Under the District Court's protective stipulation, note 7, supra, the claimants were forbidden to urge res judicata as to any findings relevant to privity made in the state court proceedings. On the other hand, after a trial by the admiralty court on the issue of the right to limit, such a finding if encompassing liability as well would be res judicata leaving only the question of damages for state court jury consideration.

The modification of the injunction must therefore be vacated and the cause reversed and remanded for a trial in the admiralty court on the petitioner's right to limit liability.

Reversed and remanded.

14. Nor are the problems all confined to the federal court. Serious questions might arise about the appealability of a so-called "final judgment" rendered for the plaintiffs but unenforceable by execution or otherwise except through permission of the admiralty court. Would the petitioner as defendant have to file a supersedeas? In the event the admiralty case came on for trial while the state court judgment was pending on an appeal, would that judgment and verdict be of

any significance as res judicata on permissible issues?

15. Hartford Accident & Indemnity Co. of Hartford v. Southern Pacific Co., 1927, 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612, 1927 A.M.C. 402; Just v. Chambers, 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903, 1941 A.M.C. 430; Spencer Kellogg & Sons v. Hicks, 1932, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903, 1932 A.M.C. 503.